UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   1:20-mj-03573 Becerra

UNITED STATES OF AMERICA

v.

UZOAMAKA LEONARD OHAEBOSIM,

Defendant.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?        __ Yes   X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   __ Yes   X_ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?        __ Yes   X_ No

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

BY: _____

MICHAEL N. BERGER
Assistant United States Attorney
Southern District of Florida
Court ID No. A5501557
99 Northeast 4th Street, 4th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9445
E-mail: michael.berger2@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>UZOAMAKA LEONARD OHAEBOSIM,<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)   Case No.  1:20-mj-03573 Becerra<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of <u>between April 2020 and June 2020</u> in the county of <u>Miami-Dade and elsewhere</u> in the <u>Southern</u> District of <u>Florida</u>, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1014 | False Statements to a Financial Institution |
| 18 U.S.C. § 1344 | Bank Fraud |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Gary L. Sherrill, Senior Investigative Advisor, FDIC
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim. 4.1 by Telephone.

Date: <u>Sept. 11, 2020</u>

_____
*Judge's signature*

City and state: <u>Miami, Florida</u>  Hon. Jacqueline Becerra, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Gary L. Sherrill, being first duly sworn, state:

### Agent Background

1.      I am a Senior Investigative Advisor for the Federal Deposit Insurance Corporation, Office of Inspector General ("FDIC-OIG"). I have been employed at the FDIC-OIG since 1991 and have held the following positions: Senior Special Agent, Special Agent in Charge, and Deputy Assistant Inspector General for Investigations. Prior to working at the FDIC-OIG, I was a Special Agent with the Defense Criminal Investigative Service for approximately eight years.

2.      As part of my duties, I investigate criminal violations relating to white collar crime, including conspiracy, bank and wire fraud, money laundering and many other illegal schemes impacting financial institutions. During the course of my career, I have investigated and/or supervised many complex investigations in which I have conducted physical surveillance, interviewed witnesses, reviewed and analyzed financial records, executed court-authorized search warrants and used other investigative techniques to secure relevant information for use in criminal prosecutions.

### Introduction

3.      This affidavit is made in support of a criminal complaint charging Uzoamaka Leonard Ohaebosim ("Ohaebosim") with violations of Title 18, United States Code, Sections 1014 (False Statements to a Financial Institution), and 1344 (Bank Fraud) between April 2020 and June 2020.

4.      As described below, there is probable cause to believe that Ohaebosim committed the above-listed offenses in connection with a bank fraud scheme targeting the Small Business Administration's Paycheck Protection Program ("PPP").

5.      The information presented in this affidavit is based on my own personal investigation as well as based on the investigation of other law enforcement officers, which was communicated to me orally or via written communication.  The facts set forth do not constitute all that has been learned in the course of the investigation but only enough to establish that probable cause exists for the issuance of a complaint and arrest warrant for Ohaebosim.

### Overview of the Paycheck Protection Program

6.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program.   In or around April 2020, up to $310 billion in additional PPP funding was authorized by Congress.

7.      In order to obtain a PPP loan, a qualifying business must submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation to the lending institution showing their payroll expenses; typically, businesses would supply documents showing the total amount of wages paid and payroll taxes reported to the Internal Revenue Service ("IRS").

8.      A PPP loan application must be processed by a participating lender.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.  In the ordinary course of providing the loan guaranty, neither the SBA nor any other government agency checks IRS records to confirm that the applicant had paid the payroll taxes represented in the PPP applications.

9.      PPP loan proceeds must be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time after receiving the proceeds.

10.     The SBA required applicants to submit a Form 2483 or Form 2484 to obtain a loan under the PPP.  This form requires applicants to identify the average monthly payroll and number of employees.  The form also requires a certification (a) that the applicant "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes"; (b) that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant"; and (c) that "[t]he funds [would] be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under" the PPP.

### Background of Stipe The Movie, LLC, and Overview of the Scheme

11.     Spite The Movie, LLC ("STM") was a corporation registered in Mississippi in January 2020 listing Ohaebosim as a manager.

12.     In or around April 2020, Ohaebosim submitted materially false and fraudulent PPP loan applications for STM to two separate financial institutions—TCF National Bank ("TCF Bank") and City National Bank ("City National").  In these applications, Ohaebosim claimed that STM employed over 100 employees in February and March 2020 and paid average monthly wages of approximately five hundred thousand to these employees.  For each of these loans, Ohaebosim requested approximately $1.2 million in PPP loans.

### The PPP Loan Application to TCF National Bank

13.     TCF Bank in South Dakota is a financial institution with deposits insured by the FDIC.  TCF Bank is an approved SBA lender and participated in the Paycheck Protection Program.

14.     On or about April 24, 2020, Ohaebosim filed a PPP loan application for STM with TCF Bank seeking a loan of approximately $1.2 million.  In the application, Ohaebosim said he was the 50% owner of STM and the primary contact in connection with the loan.   Ohaebosim certified and initialed by electronic signature a representation: (a) that the information in the application was "true and accurate in all material respects"; (b) that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including . . . under 18 USC 1014 by imprisonment of not more than thirty years"; and (c) that he "acknowledge[d] that the lender will confirm the eligible loan amount using required documentation submitted."

15.     Ohaebosim submitted several documents in support of the loan application.  Each of these documents contained false and fraudulent information.

16.     First, Ohaebosim submitted IRS Form 941 for the first quarter of 2020 for STM dated April 28, 2020.  An IRS Form 941 is an employer's quarterly federal tax return that employers are required to submit to the IRS to report quarterly payroll taxes (e.g., medicare, social security, etc.) paid on behalf of employees.  According to the Form 941 submitted by Ohaebosim,

4

STM had 104 employees and paid wages of approximately $983,117 and withheld approximately $122,945 in federal income tax during the first quarter of 2020.   The IRS maintains a database of all filed IRS Form 941.  The IRS has no record of this Form 941 for STM submitted by Ohaebosim.

17.     Second, Ohaebosim submitted purported monthly payroll statements for STM reflecting purported payments made to employees for February 2020 and March 2020.  The payroll statement lists a number of different employees with their gross pay in February and March.  Law enforcement contacted a number of individuals listed on the payroll statements who confirmed that they did not receive these funds or work for STM.  For example:

- The payroll statement listed employee D.L. that purportedly received gross pay from STM of approximately $4,468 in both February and March 2020.  Law enforcement interviewed D.L. and he/she stated that D.L. had not received this money and had never heard of STM.

- The payroll statement listed employee E.M. that purportedly received gross pay from STM of approximately $2,000 in both February and March 2000.  Law enforcement interviewed E.M. and he/she stated that E.M. had not received this money and had never heard of STM.

- The payroll statement listed employee D.B. that purportedly received gross pay from STM of approximately $8,500 in both February and March 2020.  Law enforcement interviewed D.B. and he/she stated that D.B. had not received this money and had never heard of STM.

- The payroll statement listed employee E.J. that purportedly received gross pay from STM of approximately $8,666 in both February and March 2020.  Law enforcement interviewed E.J. and he/she stated that E.J. had not received this money and had never worked on the STM project.

- The payroll statement listed employee H.B. that purportedly received gross pay from STM of approximately $8,916 in both February and March 2020.  Law enforcement interviewed H.B. and he/she stated that H.B. had not received this money and had never worked on the STM project.

18.     Third, Ohaebosim submitted a copy of a series of checks dated April 2, 2020 that were purportedly paid to employees.   The investigation has revealed that these checks are fraudulent and were not actually paid to the employees listed on the checks.

19.     TCF Bank declined to fund the PPP loan for STM.

**The PPP Loan Application to City National Bank of Florida**

20.     City National is a financial institution with deposits insured by the FDIC located in Miami, Florida.  City National is an approved SBA lender and has participated as a lender in the Paycheck Protection Program.

21.     In or around late April 2020, Ohaebosim filed a PPP loan application for STM with City National.  In all material respects, the application was identical to that PPP loan application filed earlier with TCF Bank.  As in the TCF Bank application, Ohaebosim said he was a Manager and 50% owner of STM.

22.     As part of the City National loan application, Ohaebosim again submitted documentation claiming that STM had 104 employees and an average monthly payroll of $501,222.33.  Ohaebosim submitted the same IRS Form 941 dated April 28, 2020 purportedly indicating that Ohaebosim had paid wages of approximately $983,117 and withheld approximately $122,945 in federal income tax for STM during the first quarter of 2020.  In truth and in fact, Ohaebosim had not paid this amount and not submitted this form to the IRS.

23.     On or about May 12, 2020, Ohaebosim digitally signed an SBA Form 2483.  In the form, Ohaebosim certified that STM had an average monthly payroll of approximately $500,000 and sought a loan amount of approximately $1.2 million.  Ohaebsoim signed certifications that all representations were true and accurate and that any false statement was punishable by various felonies under law.

24.     As a result of the application, City National approved payment on STM's loan application.  On or about June 11, 2020, Ohaebosim received loan proceeds of approximately $1,253,000 in his bank account at City National for STM in Miami, Florida.  City National

representatives confirmed that they relied on representations, such as those in the Form 941, in making its loan decision.

25.     On or about July 30, 2020, law enforcement made a recorded telephone call to Ohaebosim regarding the above PPP loan with City National.  On the call, Ohaebosim confirmed his identity based on his date of birth and Social Security account number.   Ohaebosim acknowledged that he submitted the IRS Form 941 to City National.   Further, on the call, Ohaebosim falsely and fraudulent represented that STM had 104 employees and had paid wages of over $900,000 in the first quarter of 2020.

## CONCLUSION

26.     Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that:

- On or about May 12, 2020, in the Southern District of Florida and elsewhere, the defendant, Uzoamaka Leonard Ohaebosim, did knowingly make a false statement and report for the purpose of influencing the action of a financial institution whose deposits are insured by the Federal Deposit Insurance Corporation in connection with a loan application, in that the defendant falsely represented on his application for a PPP loan to Bank A that he had average monthly payroll for his company Spite the Movie LLC of approximately $501,222.33, in violation of Title 18, United States Code, Section 1014.

- On or about June 11, 2020, in the Southern District of Florida, and elsewhere, the defendant, Uzoamaka Leonard Ohaebosim, did knowingly, and with intent to defraud, execute and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain any of the moneys and funds owned by, and under the custody and control of Bank A, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, that is, by causing Bank A to deposit

$1,253,000 into an account controlled by the defendant, in violation of Title 18, United States Code, Section 1344.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

*Gary L. Sherrill*

Gary L. Sherrill
Senior Investigative Advisor
Federal   Deposit   Insurance   Corporation
Office of Inspector General

Attested to by the Applicant in accordance with the requirements of
Fed.R.Crim.P. 4.1 by Telephone this ____11__ day of September 2020.

HONORABLE JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

8